531 So.2d 951 (1988)
Charles Lamond PRIDGEN, Appellant,
v.
STATE of Florida, Appellee.
No. 69699.
Supreme Court of Florida.
August 25, 1988.
Rehearing Denied October 31, 1988.
*952 James Marion Moorman, Public Defender and Steven L. Bolotin, Asst. Public Defender, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen. and Erica M. Raffel, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Charles Lamond Pridgen appeals his sentence of death and convictions for first-degree murder, robbery and burglary. We have jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution.
On October 26, 1984, Anne Marz, an elderly woman who lived alone, was found dead in her home. She was lying face down, her hands were tied behind her back with a cord cut from an iron, duct tape was across her mouth, and there was a pool of blood by her head. Her house had been ransacked and investigators determined that checks were possibly missing from her checkbook. The bank was notified to be on the lookout for anyone attempting to pass a check on her account. The bank later called the police to say that two men were attempting to cash a check on her account. One of the men, Mike Turturro, told police that he had been given the check by a man named Chuck Marz. The police then went with Turturro back to his home where he identified Charles Pridgen as Chuck Marz. The police recovered Mrs. Marz's wedding rings from Pridgen's possession.
After Pridgen was arrested, he gave a statement at the police station in which he confessed to the killing. Later, Pridgen indicated that he had confessed to this crime because he wanted to die in the electric chair to show an ex-girlfriend how much she had hurt him. Prior to trial, psychiatric evaluations determined that Pridgen was competent to stand trial.
At trial, Darryl Meadows testified for the defense that he had picked up Charles Pridgen hitchhiking on the day before the murder. Meadows indicated that he was actually the person who killed Mrs. Marz and that he forced Pridgen to sell her rings and pass the checks for him. Despite this confession, the jury found Pridgen guilty of Mrs. Marz's murder.
Before the commencement of the trial's penalty phase, defense counsel indicated that, against his advice, Pridgen did not want to call any witnesses or put on any mitigating evidence but did wish to make a statement to the jury. Defense counsel then asked the judge to make an inquiry of Pridgen to make certain that he understood the consequences of his decision. Several *953 times during the colloquy, Pridgen demanded that the judge kill him. Finding that Pridgen understood his action, the judge allowed him to be called as a witness in his own behalf. Pridgen then made a rambling statement in which he seemed to protest his innocence even though he said it was his purpose that the jury find him guilty. He closed by asking for a sentence of death and stating that he was dropping all appeals. After Pridgen's statement, defense counsel requested that one of the pretrial psychiatrists, Dr. McClane, be allowed to reexamine Pridgen for his competency. Counsel said that he had discussed Pridgen's conduct at the trial with Dr. McClane and that the doctor now had concerns that Pridgen was no longer competent to assist his counsel. The trial judge agreed to recess for a period of time to allow Dr. McClane to interview Pridgen.
When court reconvened, Dr. McClane took the stand and testified that he had interviewed Pridgen for approximately one hour and forty-five minutes. He said that prior to trial he had concluded that Pridgen was competent to stand trial but that it was "a somewhat borderline call." He now believed that events occurring at the trial, particularly the jury's finding of guilt, had possibly tipped Pridgen "over the edge" to incompetency. He said that Pridgen was probably incompetent to stand trial, though he could not say that to a medical certainty. Dr. McClane expressed the opinion that because of his mental illness, Pridgen was not rationally making decisions. He recommended that:
[I]f it's possible that he be hospitalized for whatever time necessary; and I would estimate something like a few weeks minimum, for both psychiatric treatment, medication and counseling and then have a further determination of competency at that time of the termination of that.
Defense counsel then requested that the penalty proceeding be continued so that Pridgen could receive further psychiatric evaluation of his competency to stand trial. The trial judge denied the request and allowed the penalty phase to proceed. In accordance with Pridgen's wishes, defense counsel offered no mitigating evidence and the jury recommended that Pridgen be sentenced to death.
The jury's penalty recommendation was received on May 23, 1985. On May 28, 1985, the trial judge appointed three experts to determine Pridgen's competency for sentencing. Based on the experts' opinions, the trial judge ordered Pridgen to undergo psychiatric treatment before being sentenced. Over the next year and a half, several hearings were held to determine Pridgen's competency to be sentenced. Finally, on October 31, 1986, the judge found Pridgen to be competent and heard mitigating testimony. Finding no mitigating factors and seven aggravating factors,[1] the trial judge sentenced Pridgen to death for Mrs. Marz's murder. Additionally, Pridgen was sentenced to consecutive sentences of life imprisonment and fifteen years for the burglary and robbery respectively.
Pridgen raises twelve issues on this appeal, but only two of them merit our discussion:[2] his competency to stand trial *954 and his competency during the penalty proceeding. The United States Supreme Court in Dusky v. United States, 362 U.S. 402, 402, 80 S.Ct. 788, 788, 4 L.Ed.2d 824 (1960) (quoting Brief of the Solicitor General), stated that the standard to determine whether a defendant is competent to stand trial is "`whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding  and whether he has a rational as well as factual understanding of the proceedings against him.'" Florida adopted this competency test in rule 3.211(a), Florida Rules of Criminal Procedure. The record indicates that prior to the commencement of his trial, Pridgen was evaluated and found to be competent to stand trial. Both experts indicated in their written reports that Pridgen understood both the nature of the proceedings and the charges against him and was able to effectively consult with his attorney to prepare his defense. Consequently, we find no error in proceeding with the guilt phase of his trial.
However, Pridgen's competency to stand trial by the time of the penalty proceedings is another matter. In Drope v. Missouri, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975), the United States Supreme Court held that due process was violated when the court failed to suspend the proceedings for psychiatric evaluations when the defendant who had previously exhibited bizarre behavior shot himself in the foot on the second day of the trial. The Court said:
The import of our decision in Pate v. Robinson is that evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but that even one of these factors standing alone may, in some circumstances, be sufficient. There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated.
... .
Even when a defendant is competent at the commencement of his trial, a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial.
Id. at 180-81, 95 S.Ct. at 908.
Florida courts have also held that the determination of the defendant's mental condition during trial may require the trial judge to suspend proceedings and order a competency hearing. Scott v. State, 420 So.2d 595 (Fla. 1982); Holmes v. State, 494 So.2d 230 (Fla. 3d DCA 1986). See Lane v. State, 388 So.2d 1022 (Fla. 1980) (finding of competency to stand trial made nine months before does not control in view of evidence of possible incompetency presented by experts at hearing held on eve of trial). In fact, Florida Rule of Criminal Procedure 3.210(b) provides:
If before or during the trial the court of its own motion, or upon motion of counsel for the defendant or for the State, has reasonable ground to believe that the defendant is not mentally competent to stand trial, the court shall immediately enter its order setting a time for a hearing to determine the defendant's mental condition, which shall be held no later than 20 days after the date of the filing of the motion, and shall order the defendant to be examined by no more than three nor fewer than two experts prior to the date of said hearing. Attorneys for the State and the defendant may be present at the examination.
(Emphasis added.)
The record in the instant case reflects "reasonable ground to believe" that Pridgen was not mentally competent to continue to stand trial during the penalty phase of the proceeding. The trial judge, himself, appeared to have qualms about Pridgen's *955 mental condition because five days after the trial he sua sponte appointed three experts to examine Pridgen for his competency to be sentenced. At a later competency hearing, the judge observed that one reason he had wanted to finish the trial without further delay was because of Pridgen's deteriorating mental condition.
If Pridgen was incompetent during the penalty phase of the trial, the tactical decisions made by him to offer no defense to the state's recommendation of death cannot stand. Therefore, we hold that the judge erred in declining to stay the sentencing portion of the trial for the purpose of having Pridgen reexamined by experts and holding a new hearing on his competency to continue to stand trial. A retroactive determination of competency cannot now be made. Hill v. State, 473 So.2d 1253 (Fla. 1985).
We affirm the judgment of guilt. We reverse the sentence and remand the case for a new hearing to determine Pridgen's competency to stand trial. Upon a determination of competency, Pridgen shall be resentenced after the recommendation of a new jury.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] The aggravating circumstances were: (1) the defendant was previously sentenced to prison for violent crimes and was on probation at the time the murder was committed; (2) the defendant was previously convicted of a felony involving violence; (3) the murder was committed during the course of a robbery and burglary; (4) the murder was committed for the purpose of avoiding lawful arrest; (5) the murder was committed for pecuniary gain; (6) the murder was especially heinous, atrocious, and cruel; and (7) the murder was committed in a cold, calculated, and premeditated manner.
[2] The remaining ten issues are: (1) the failure to suppress Pridgen's confession to Major Judd; (2) the trial court's failure to ensure that Pridgen was competent to conduct his own defense during the penalty phase; (3) defense counsel's failure to call any mitigating witnesses during the penalty phase; (4) the trial court's error in allowing Pridgen to prevent the introduction of any mitigating evidence during the penalty proceeding; (5) the trial court's refusal to set aside the jury's penalty recommendation; (6) the prosecutor's closing argument which allegedly diminished the jury's sense of responsibility; (7) the failure to find the existence of any statutory or nonstatutory mental mitigating factors; (8) the failure to find that there was insufficient evidence to support the aggravating circumstances; (9) the trial court's improper departure from the guidelines in imposing sentences for the robbery and burglary; and (10) that the dual confessions require either that Pridgen be granted a new trial or life imprisonment in the interests of justice.