574 So.2d 1164 (1991)
Howard L. FINKELSTEIN, Chief Assistant Public Defender, 17TH Judicial Circuit, in and for Broward County, Florida, the Honorable Alan H. Schreiber, Public Defender, 17th Judicial Circuit, in and for Broward County, Florida, and John Fogelman, Petitioners,
v.
STATE of Florida, Respondent.
No. 90-2964.
District Court of Appeal of Florida, Fourth District.
February 6, 1991.
*1165 Alan H. Schreiber, Public Defender, Steven Michaelson and Diane M. Cuddihy, Asst. Public Defenders, Fort Lauderdale, for petitioners.
Annabelle Whiting Hall (Licensed to practice law in the State of Nev.) (Not licensed to practice law in the State of Fla.), Reno, Nev., and Michael J. Wrubel, Fort Lauderdale, as amicus curiae, on behalf of Nat. Ass'n of Crim. Defense Lawyers and Broward County Crim. Defense Attys. Ass'n.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Georgina Jimenez-Orosa, Asst. Atty. Gen., West Palm Beach, for respondent.
PER CURIAM.
Petitioners Howard Finkelstein, Alan H. Schreiber, public defender of Broward County and John Fogelman, defendant in a pending criminal prosecution, sought certiorari review and relief from a trial court ruling removing the court appointed public defender and appointing a substitute special public defender. This court sua sponte removes Judge Robert Carney as the named respondent and substitutes in his place the State of Florida. Also, we grant the petition and quash the trial court order removing the public defender.
Petitioner Fogelman was arrested on December 20, 1989 and the public defender was appointed to represent him on January 10, 1990. The State filed an information charging Fogelman in one case with two counts of armed robbery, attempted armed sexual battery, attempted armed robbery and aggravated assault. In a separate case number, Fogelman was charged with two counts of armed sexual battery, attempted sexual battery, armed kidnapping, armed robbery, aggravated battery and carrying a concealed weapon. The cases were assigned to Chief Assistant Public Defender Howard Finkelstein. After conducting discovery, the defense on May 2, 1990 filed a notice of objection to "Williams Rule" and a motion to suppress physical evidence, statements and identification.
On August 1, 1990, the public defender's office filed a "Notice of Insanity at Time of Offense." A motion to determine Fogelman's competency was filed and noticed for hearing on August 21, 1990. The trial court advised Public Defender Finkelstein that it would not hold a competency hearing on this date, as it was a time for brief motion calendar hearings only. Finkelstein reiterated his request for an evidentiary hearing and advised the court that a hearing date was set on his motions to suppress and his "Williams Rule" motion for October 4, 1990, with trial scheduled for October 8, 1990. Accordingly, the trial court reset the competency hearing for Friday, September 28, 1990.
On September 12 and September 26, 1990, Public Defender Finkelstein filed *1166 Amended Notices of Insanity at Time of Offense. On September 28, 1990, a competency hearing commenced. Finkelstein brought forward witnesses, a Dr. Lynn Rich and Dr. Seligson. Dr. Rich testified that Fogelman was incompetent to stand trial. The State did not call live witnesses, but advised that it would rely on their reports. The trial court indicated that that was inadmissible hearsay and that it would require live testimony. The hearing was scheduled for continuation on October 30, 1990.
On October 2, 1990, trial Judge Carney held a status conference hearing, where he announced that trial would be rescheduled to November 19, 1990. Public Defender Finkelstein moved to continue the hearing on the motion to suppress and "Williams Rule" motion until after the competency issue was determined by the court. Finkelstein argued that he could not go forward with the motion to suppress and "Williams Rule" motion as the defendant has a right to be present at all material stages of the proceedings and that his present mental state rendered him "absent." Judge Carney denied the motion.
On October 4, 1990, Finkelstein was present at court but advised he was not ready to proceed with the pretrial motions until after defendant's competency was determined. Nonetheless, the trial court acknowledged the presence of the necessary witnesses for the hearing on the pretrial motions and directed Finkelstein to proceed. Judge Carney agreed to defer ruling on the motions until he determined the competency hearing, but said that he would not continue the hearing until after the competency hearing was completed. Finkelstein then moved to withdraw his motions without prejudice to raise them later in the case. He asked that this withdrawal be acknowledged as being without prejudice to his client's fourth amendment rights. Judge Carney denied the motion. The State then indicated that it did not believe that it was its burden to proceed with witnesses and defense counsel, Finkelstein, reiterated his position that he could not proceed until final determination of his client's competency. Specifically, he said the motion to suppress involved a warrantless stop and that defendant would have to testify to it. He again requested continuance, which was denied. The following exchange took place between Public Defender Finkelstein and Judge Carney:
THE COURT: At this point then the best I can say, counsel, is whether you agree or disagree with the ruling; and so that we'll make it very, very clear, whether you agree or disagree with the ruling you are certainly entitled to disagree with the ruling.
If you disagree with the ruling your option when you disagree with the ruling is to take it to the appellate court. If I'm incorrect you have full appellate remedies.
Taking and [sic] approach that if you don't rule the way I want I'm not going to play in the Court's view does not effectively represent your client. And in the Court's view I believe the appellate courts have issued not only is it improper under the attorney's code and improper for an attorney to do that and may subject an attorney to bar violations for so doing, in the Court's view it's improper here.
There are remedies you have, remedies if I'm wrong you have a full palanopy [sic] of remedies that you can choose from to have an appellate court say I'm wrong and have the matter determined.
To say I'm not going to play, I'm not going to call witnesses, I'm going to give up my client's right to be heard on motions because I personally disagree with the Court's ruling, in the Court's view is just simply flat wrong.
If that's your case, if that's what you seek to do, then it's the Court's ruling at this point first that the defendant having failed to carry his burden, his motion to suppress is denied.
And number two, I'm going to direct that the Bar Association take a look at this and determine whether or not counsel has acted properly and competently and abided by the rules of court which require that even though he disagrees *1167 with the ruling he abide by it and play by the same rules everybody else plays by.
At any rate, I'll direct the Bar Association review it, give you a transcript of what has been had and motion to suppress on all counts is denied.
That's the end of argument.
MS. SEILER: I believe there's one other motion pending before the Court. There are objections about "Williams Rule." What would the Court be doing about that?
THE COURT: I'll tell you what I'm going to do. I'm going to reverse. At this point I'm going to direct that Mr. Finkelstein be removed from the case. You are no longer the attorney of record on the case.
If you give me my special PD list I'll point special PD. I'm still going to take action with Bar Association on it. I'll appoint new attorney so the defendant's rights are not jeopardized at this point and he does not forego his rights on the motion because the attorney chooses not to do it. I'll appoint another attorney to represent him.
THE DEFENDANT: I don't want another attorney.
THE COURT: I'm not going to leave Mr. Finkelstein on the case.
Appoint Ed Salantrie on both cases.
MS. SEILER: Your Honor, before we recess, before we take the defendant away, as far as there is an objection to the "Williams Rule" we have 
THE COURT: I'm not going to rule on it at this point. I want him represented by competent counsel on that. I'm not going to  I'll readdress the issues on the motion to suppress and I'll readdress the issues 
The trial court order dated November 2, 1990, nunc pro tunc to its October 4, 1990 oral ruling, essentially reflects what the court did in the exchange quoted earlier. The opinion includes Judge Carney's statement that:
Mr. Finkelstein's repeated refusal to proceed not only denied his client his Sixth Amendment right to counsel, but also violated Mr. Finkelstein's obligation as a lawyer to zealously represent his client within the bounds of the law... .
The Court has the obligation to insure that an accused has a right to competent counsel. Where counsel's performance falls below that standard the Court has the inherent authority and the duty to remove that counsel and to appoint competent substitute counsel.
Petitioners argue that this ruling constitutes a departure from the essential requirements of law. We agree.
Although an indigent does not have the right to demand that a court appoint particular defense counsel, the substitution of counsel once appointed falls under the trial court's reasonable discretion. Abuse of the trial court's discretion has been found in several cases, such as McKinnon v. State, 526 P.2d 18 (Alaska 1974) (overruled on other grounds, Kvasnikoff v. State, 535 P.2d 464 (Alaska 1975)), where the court held that a trial judge's removal of a public defender, over counsel's and defendant's protest, based on the judge's belief that counsel was unprepared, constituted a deprivation of the defendant's fundamental and constitutional rights to his choice of counsel.
In Harling v. United States, 387 A.2d 1101 (D.C.App. 1978), the District of Columbia Court of Appeals held that a trial court's arbitrary removal of a defendant's appointed trial counsel, over the objections of both defendant and counsel, violated that defendant's Sixth Amendment rights. In that case, defense counsel took the position that he would be rendering ineffective assistance of counsel if he proceeded with trial in the absence of certain previously requested discovery from the state. The trial judge said that he would strike defense counsel and appoint substitute counsel. Defendant asked for reinstatement of his appointed attorney, which the court denied. On appeal, the court acknowledged that once counsel has been retained, a trial court may not unreasonably interfere with the accused's choice of counsel. Id. at 1104, citing Lee v. United States, 98 U.S. App.D.C. 272, 235 F.2d 219 (1956), aff'd after remand, 102 U.S.App.D.C. 204, 251 F.2d 915 *1168 (1958). The court said that the only limitation to this principle is that the client's selection may not impede or disrupt the orderly administration of justice. Id., citing McKoy v. United States, 263 A.2d 645 (D.C.App. 1970) (refusal to substitute counsel near close of trial not an abuse of discretion). The Harling court said that "[O]nce counsel has been chosen, whether by the court or the accused, the accused is entitled to the assistance of that counsel at trial." Id. at 1105, citing English v. State, 8 Md. App. 330, 259 A.2d 822, 826 (1969) (emphasis in original). However, the court said that the right to assistance of chosen counsel is not absolute, and that a trial judge may in the interest of justice substitute one counsel for another. Gross incompetence, physical incapacity of counsel or conduct which cannot be cured by contempt proceedings may justify the court's removal of counsel even over defense objections. Id. at 1105, (emphasis added).
In Harling, the court found that the record failed to disclose any justifiable basis for the trial judge's removal of appointed trial counsel. Counsel's efforts at obtaining the discovery before proceeding to trial were found to be "within the bounds of reasonable advocacy ... the court's response to counsel's persistence was both intemperate and unwise. Mere disagreement as to the conduct of the defense certainly is not sufficient to permit the removal of any attorney." Id. The court therefore reversed and remanded for a new trial.
In Smith v. Superior Court of Los Angeles County, 68 Cal.2d 547, 68 Cal. Rptr. 1, 440 P.2d 65 (1968), the Supreme Court of California granted a petition for writ of mandate holding that it was beyond the powers of the trial judge to remove court appointed defense counsel over the objections of both the attorney and defendant, because in the judge's subjective opinion, counsel was "incompetent" (based on ignorance of the law) to try the particular case before him. In that case, an abrasive colloquy took place between the trial judge and court-appointed defense counsel. The trial judge asked defense counsel if he had ever tried a death penalty case before and he said that he had not. The court then said that it had doubts as to counsel's competency. After calling a recess, the court reconvened and ruled that counsel was not capable of representing the defendant in light of the serious nature of the charge, counsel's lack of experience in a death penalty case, and his conduct before in another case. The trial court then removed counsel from the case and appointed substitute counsel. On appeal, the supreme court concluded that the constitutional guarantee of the defendant's right to counsel requires that his advocate, whether retained or appointed, be free of the threat that he may be summarily relieved as "incompetent" by the trial judge.
In this case, the public defender's position during trial was that he could not proceed with other pretrial motions until his client's competency was determined. This position is supported by Florida Rule of Criminal Procedure 3.210(b), which provides:
If, at any material stage of a criminal proceeding, the court of its own motion, or upon motion of counsel for the defendant or for the State, has reasonable ground to believe that the defendant is not mentally competent to proceed, the court shall immediately enter its order setting a time for a hearing to determine the defendant's mental condition, which shall be held no later than 20 days after the date of the filing of the motion, and shall order the defendant to be examined by no more than three, nor fewer than two, experts prior to the date of said hearing. Attorneys for the State and the defendant may be present at the examination.
Subsection (a) of this same rule provides:
A person accused of an offense or a violation of probation or community control who is mentally incompetent to proceed at any material stage of a criminal proceeding shall not be proceeded against while he is incompetent.
See Nowitzke v. State, 572 So.2d 1346, (Fla. 1990) (error in failing to conduct competency hearing prior to trial).
*1169 The proper standard in determining whether a competency hearing is required is whether there are reasonable grounds to believe that a defendant may be incompetent, not whether he actually is incompetent. See Tingle v. State, 536 So.2d 202 (Fla. 1988); Scott v. State, 420 So.2d 595 (Fla. 1982); Unruh v. State, 560 So.2d 266 (Fla. 1st DCA 1990); Walker v. State, 384 So.2d 730 (Fla. 4th DCA 1980). Also, a hearing to determine whether a defendant was competent at the time he was tried generally cannot be held retroactively. See Tingle v. State, supra. In Pridgen v. State, 531 So.2d 951 (Fla. 1988), the Florida Supreme Court reversed a conviction and sentence where the trial judge had erred in declining to suspend or stay the sentencing portion of the trial in order to have the defendant re-examined by experts and to hold a competency hearing. The court reiterated that a retroactive determination of competency cannot be made. Id. at 955, citing Hill v. State, 473 So.2d 1253 (Fla. 1985).
Thus it appears that the trial court erred in failing and refusing to suspend the proceedings against defendant Fogelman until completion of the competency determination. It is obvious that the trial judge wanted to use the time already reserved in his busy schedule to proceed on the pretrial motions before him, even though the competency determination had not been made. It is also clear that he offered to reserve ruling on the motions, until after the determination on whether defendant Fogelman was incompetent. However, the public defender correctly objected, arguing that if Fogelman was in fact incompetent, defense counsel would not be able to effectively press even the pretrial defense motion to suppress and the "Williams Rule" motion. Argument on these motions would require participation by or input from the defendant. If the defendant was incompetent, the public defender argued that he would be effectively deprived of the right to participate in the proceedings and indeed to be effectively "present" at them.
We conclude that the trial court departed from the essential requirements of law when it removed Howard Finkelstein as public defender representing petitioner John Fogelman. The court could have ordered Finkelstein to proceed, and suggested the possibility of contempt proceedings against him if he were to fail to do so. However, it did not entertain that option. Removal of counsel without even allowing an opportunity for objection and argument is and should be perceived as a threat to the independence of the bar as well as an abuse of discretion.
THE PETITION IS GRANTED, AND THIS CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.
DOWNEY and GARRETT, JJ., and WALDEN, JAMES H., (Retired), Associate Judge, concur.