699 So.2d 1343 (1997)
Richard Tony ROBERTSON, Appellant,
v.
STATE of Florida, Appellee.
No. 81324.
Supreme Court of Florida.
July 3, 1997.
Rehearing Denied October 9, 1997.
*1344 Nancy A. Daniels, Public Defender and Nada M. Carey, Assistant Public Defender, Second Judicial Circuit, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General and Barbara J. Yates, Assistant Attorney General, Tallahassee, for Appellee.
PER CURIAM.
Richard Tony Robertson, a prisoner under sentence of death, appeals his convictions and sentences. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
The following facts were revealed at trial. On Monday, September 2, 1991, the nude, badly decomposed body of Carmella Fuce was found in the bedroom of her Tallahassee apartment. Ms. Fuce was found on her back. A pair of pants were tied around her head and a brassiere was stuffed in her mouth. A teddy bear was between her legs, and an electrical cord was around her neck. The victim's hands were tied behind her back with a piece of cloth and an electrical cord. According to the medical examiner, the cause of death was strangulation asphyxia. The medical examiner further testified that the victim's brassiere had been stuffed down her throat with such force that if she had not *1345 been strangled, the gag could have caused her death.
Written on the bedroom wall were the words "Saten sic, Nigger, Fuck, FSU, FAMU, KKK, ANM." The handwriting on the wall matched samples later submitted by Robertson. Ms. Fuce's car was found in the apartment complex parking lot, with the driver's door unlocked. A single key was in the ignition and the anti-theft device on the steering wheel was unlocked.
Identifying himself as "Tony Nixon," Robertson called the Tallahassee Police Department on September 4, 1991. Robertson told police that he knew the victim and wanted to talk with police if someone would come and pick him up. Investigator Springer drove Robertson to the police station and interviewed him. At that time, Robertson denied involvement in the murder. After being interviewed by several investigators, Robertson left the police station. However, he continued to stay in contact with police over the next few days.
On September 9, 1991, Robertson was hospitalized after threatening to kill himself. On September 11, Robertson was released into police custody, at which time he was arrested and taken to the police station. Over a several hour period, Robertson made a number of statements to police. In the first statement to Investigator Springer, Robertson denied killing Ms. Fuce. He continued to deny involvement in an interview with other investigators. However, when Investigator Springer resumed questioning Robertson, Robertson confessed to the murder.
According to Robertson, he hurt Ms. Fuce because he "was off [his] medication" and his "mind was whooped." Robertson explained that after going to a local night club, he went to Ms. Fuce's apartment and she let him in. He and Ms. Fuce were "just playing around" when he tied her up. He got her in a choke hold and "all of sudden she just fell." He tried to revive her but was unsuccessful. A short time later, Robertson told basically the same story to another investigator.
Robertson was charged with I) first-degree premeditated murder; II) burglary with an assault; III) robbery; IV) burglary of a conveyance; and V) grand theft of a motor vehicle. The jury found Robertson guilty of charges I, II, IV, and V. On the robbery charge, the jury found Robertson guilty of the lesser included offense of theft of property worth $300 or more. Robertson testified during the penalty phase and asked that he be sentenced to death.
The jury recommended death by a vote of eleven to one. The trial court found two aggravating factors: 1) the capital felony was committed during the course of a burglary; and 2) the murder was especially heinous, atrocious, or cruel.[1] The court found Robertson's age of nineteen[2] and impaired capacity in mitigation. The court further considered in mitigation Robertson's abused and deprived childhood, his history of mental illness and his borderline functional intelligence. However, the court gave the mitigation little weight and sentenced Robertson to death. Robertson appeals his convictions and death sentence.
Robertson raises eight issues in this appeal.[3] After oral argument, we asked the parties to file supplemental briefs addressing the sufficiency of the evidence to support the burglary with assault conviction and the "committed during the course of a burglary" aggravator. Only five of the nine issues merit discussion.
*1346 We begin by addressing Robertson's claim that the trial court erred by failing to order a competency hearing. Robertson is correct that a defendant has a due process right to a determination of competency to stand trial whenever there is reasonable ground to doubt the defendant's competency. Drope v. Missouri, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); Nowitzke v. State, 572 So.2d 1346, 1349 (Fla.1990); Pridgen v. State, 531 So.2d 951, 954 (Fla.1988). Consistent with this long-standing rule, Florida Rule of Criminal Procedure 3.210(b) requires the trial court to order a competency hearing on its own motion whenever it has reasonable ground to believe that the defendant is not mentally competent to proceed. Accord Lane v. State, 388 So.2d 1022 (Fla. 1980) (trial court has responsibility to conduct a hearing to determine competency to stand trial whenever it reasonably appears necessary); Fowler v. State, 255 So.2d 513 (Fla.1971) (failure to hold hearing on question of competency prior to ruling on issue was abuse of discretion). However, on this record the trial court did not abuse its discretion by failing to hold such a hearing.
Robertson maintains that the need for a competency hearing was made apparent to the trial court during the September 25, 1992, hearing on defense counsel's motion for a continuance. In that motion, defense counsel alleged Robertson had refused to meet with him or the investigator, Robertson had a history of mental problems that needed to be checked out for possible use in the penalty phase of the trial, some of Robertson's records were missing and much investigation and work needed to be done in order to prepare for the penalty phase of the trial. Robertson's disruptive behavior throughout the September 25 hearing prompted the trial court to inquire whether court-ordered psychological reports had been received.
The court was reminded that Drs. Brown and McClaren had been appointed at defense counsel's request in April 1992. A discussion of the reports followed. Although there was some disagreement as to how Dr. McClaren's report should be interpreted, defense counsel expressly declined to seek a determination of Robertson's competency. And ultimately, it was revealed that both experts had found Robertson at least minimally competent to stand trial. Under the circumstances, Robertson's competency was not sufficiently in doubt to mandate a hearing on the issue; thus the trial court cannot be faulted for failing to order one.
Next, we address the sufficiency of the evidence to support Robertson's conviction of burglary with an assault. Section 810.02(1), Florida Statutes (1991), defines burglary as:
[E]ntering or remaining in a structure or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter or remain.

(Emphasis added). Under the statute, one commits burglary by: 1) "entering" a structure with the intent to commit an offense therein or 2) "remaining in" a structure with the requisite intent. Routly v. State, 440 So.2d 1257 (Fla.1983), cert. denied, 468 U.S. 1220, 104 S.Ct. 3591, 82 L.Ed.2d 888 (1984); Ray v. State, 522 So.2d 963 (Fla. 3d DCA), review denied, 531 So.2d 168 (Fla.1988). The statute also makes consent an affirmative defense to a charge of burglary. State v. Hicks, 421 So.2d 510 (Fla.1982). As explained by the Third District Court of Appeal,
[o]nce consensual entry is complete, a consensual "remaining in" begins, and any burglary conviction must be bottomed on proof that consent to "remaining in" has been withdrawn.
Ray, 522 So.2d at 965.
From our reading of the record, Robertson met his initial burden of establishing that he entered Ms. Fuce's apartment with her consent. See Coleman v. State, 592 So.2d 300, 301-02 (Fla. 2d DCA 1991) (once defendant presents evidence of consensual entry, State has burden to disprove defense of consent beyond a reasonable doubt). However, on this record a rational trier of fact could have found proof of withdrawal of consent beyond a reasonable doubt. Cf. Melendez v. State, 498 So.2d 1258 (Fla.1986). There was ample circumstantial evidence *1347 from which the jury could conclude that the victim of this brutal strangulation-suffocation murder withdrew whatever consent she may have given Robertson to be in her apartment. See Ray, 522 So.2d at 966 (withdrawal of consent to remain can be proved by circumstantial evidence). The jury reasonably could have concluded that Ms. Fuce withdrew consent for Robertson to remain when he bound her, blindfolded her, and stuffed her brassiere down her throat with such force that according to the medical examiner she likely would have suffocated from the gag if she had not been strangled first.
Although we find sufficient evidence to support the burglary with an assault conviction, we find insufficient evidence to support Robertson's convictions of burglary of a conveyance and grand theft of an automobile. As noted above, Ms. Fuce's car was found in the parking lot with the driver's door unlocked, a key in the ignition, and the anti-theft device on the steering wheel unlocked. There was no physical evidence that Robertson had ever been inside the car. Although Robertson admitted being unable to start the car earlier on the day of the murder when he was with Ms. Fuce, there is no evidence from which to conclude that Robertson entered the car either before or after the murder in an attempt to steal it. Cf. State v. Stephens, 601 So.2d 1195 (Fla.1992) (evidence that defendant entered automobile with intent to steal it sufficient to support conviction of burglary of a conveyance).
Although we find insufficient evidence to support the burglary of a conveyance conviction and the grand theft of an automobile conviction, we reject the remainder of Robertson's guilt-phase claims. Although Robertson does not challenge his first-degree murder conviction, our review of the record reveals competent, substantial evidence to support that conviction.
Now, we turn to the penalty phase of the trial. Because we find sufficient evidence to support the burglary with an assault conviction, we reject Robertson's claim that there was insufficient evidence to support the "during the course of a burglary" aggravator. We also cannot agree that the heinous, atrocious, or cruel aggravator does not apply here. This Court consistently has found this aggravator to apply where, as here, a conscious victim is strangled. E.g., Carroll v. State, 636 So.2d 1316 (Fla.), cert. denied, 513 U.S. 973, 115 S.Ct. 447, 130 L.Ed.2d 357(1994); Hildwin v. State, 531 So.2d 124 (Fla.1988), aff'd 490 U.S. 638, 109 S.Ct. 2055, 104 L.Ed.2d 728 (1989); Tompkins v. State, 502 So.2d 415 (Fla.1986), cert. denied, 483 U.S. 1033, 107 S.Ct. 3277, 97 L.Ed.2d 781 (1987).
Although the trial court found two valid aggravating circumstances, we find that death is not proportionately warranted in light of the substantial mitigation present in this case: 1) Robertson's age of nineteen; 2) Robertson's impaired capacity at the time of the murder due to drug and alcohol use; 3) Robertson's abused and deprived childhood; 4) Robertson's history of mental illness; and 5) his borderline intelligence. When compared to other death penalty cases, death is disproportionate under the circumstances present here. Cf. Nibert v. State, 574 So.2d 1059 (Fla.1990) (death penalty not proportionately warranted where heinous, atrocious, or cruel aggravator was offset by substantial mitigation that included abused childhood, extreme mental and emotional disturbance and impaired capacity due to alcohol abuse). For no apparent reason, Robertson strangled a young woman who he believed had befriended him. It was an unplanned, senseless murder committed by a nineteen-year-old, with a long history of mental illness, who was under the influence of alcohol and drugs at the time. This clearly is not one of the most aggravated and least mitigated murders for which the ultimate penalty is reserved. See Kramer v. State, 619 So.2d 274, 278 (Fla.1993).
Accordingly, we reverse the convictions of burglary of a conveyance and grand theft of an automobile and affirm the first-degree murder, burglary with an assault, and theft convictions. We also vacate the death sentence and remand for imposition of a life sentence without eligibility for parole for twenty-five years.
It is so ordered.
*1348 OVERTON, GRIMES and HARDING, JJ., concur.
WELLS, J., concurs in part and dissents in part with an opinion.
KOGAN, C.J., concurs in part and dissents in part with an opinion, in which SHAW and ANSTEAD, JJ., concur.
WELLS, Judge, concurring in part and dissenting in part.
I concur with the majority in respect to the conviction.
I dissent from the reversal of the death sentence. I believe that the trial court was correct in following the eleven-to-one recommendation for death by the jury. I believe that the two serious aggravators in this case outweigh the mitigators and that death is clearly proportionate under a fair analysis of our capital decisions.
KOGAN, Chief Judge, concurring in part and dissenting in part.
I must dissent because a competency hearing was mandated here.
The need for a competency determination became an issue during the September 25, 1992, hearing on defense counsel's motion for a continuance. Among other things, that motion brought to the trial court's attention the fact that Robertson had refused to meet with defense counsel or his investigator and that Robertson had a documented history of mental problems dating to when he was thirteen. This information together with Robertson's bizarre behavior during the continuance hearing raised sufficient doubt about Robertson's competency to require a hearing on the issue. Accord Lane v. State, 388 So.2d 1022, 1026 (Fla.1980) (need for competency hearing is activated by defendant's irrational behavior or evidence of mental illness that raises a doubt as to the defendant's present competence).
Robertson talked almost incessantly throughout the September 25 hearing. He continuously interrupted counsel and the judge with obscenity-laced diatribes, demanding that he be allowed to go to trial and to represent himself. He also insisted that the court "give [him] the chair." As the majority notes, Robertson's extreme behavior prompted the trial court to inquire whether court-ordered psychological reports had been received.
The court was reminded that Drs. Brown and McClaren had been appointed at defense counsel's request in April of 1992. Both attorneys agreed that Dr. Brown, who examined Robertson in April and May of 1992, had found Robertson minimally competent. However, counsels' assessments of Dr. McClaren's findings differed. According to defense counsel, Dr. McClaren, who examined Robertson in June and July of 1992, had been unable to complete his tests because Robertson would not cooperate. Thus, defense counsel told the court that Dr. McClaren really could not tell whether Robertson was competent and had suggested that Robertson be sent to Chattahoochee where they could observe him, make sure he took his medication, and determine whether he was competent.
Defense counsel also told the court that he had tried to meet with Robertson about seven times but Robertson refused to meet with him. Therefore, according to counsel, he did not have a good faith reason to believe Robertson was competent or incompetent and thus could not make a motion either way. Defense counsel concluded: "So we are stuck in a problem with a competency issue, regardless of whether or not he wants to cooperate with me or cooperate with the state in putting together his case."
At this point, the trial judge indicated he had doubts about Robertson's competency.
Let me hear from the state. But from the reports that I had received, and the inability to receive the other doctor's report, which apparently, the inability to receive that opinion and evaluation is the result of Mr. Robertson's actions. And the demonstration that Mr. Robertson has placed on this record here so far this morning leads me to believe that under the rule, that there is some question concerning his competency, and perhaps an order should be entered.
The prosecutor told the court that Dr. McClaren had found Robertson competent and that in the prosecutor's opinion Robertson was just playing games and there was nothing wrong with him other than that he *1349 was "mean." The trial court did not comment further on the competency question.
Rather, the court granted the motion for continuance and attempted to conduct a Faretta inquiry. After a bizarre exchange with Robertson, the court found that Robertson was not competent to represent himself. During the inquiry Robertson told the court that he was "the devil's catcher. So I got to catch y'all before y'all try to catch me.... Y'all a bunch of devils. You look like devils. I'm going against the devil. And I believe I'm gonna win against Satan's people." Robertson objected to the court's ruling, among other things, telling the court, "I ain't talking to nobody." The hearing concluded with Robertson threatening that if he ever escaped, "[I]f I see you in New York, I'm getting machine guns and blow up every damn thing I ever see. I told y'all to fry me. If you don't fry me, I'm gonna kill...."
It was clear from the psychological reports, which were available to the court at the time of the continuance hearing, that Robertson's mental health problems predated the murder. According to the reports, Robertson had been institutionalized several times prior to the evaluations and had been perceived as suffering from schizophrenia prior to the time of the offense. Robertson also had received treatment since his arrest for symptoms of schizophrenia and he was refusing medication that had been prescribed for the condition. From the hearing on the motion for continuance, the court also was aware that Robertson was not communicating with his attorney and that his pretrial behavior was bizarre at best.
Even though both psychologists concluded that Robertson was minimally competent, their reports were at best equivocal. Dr. Brown found Robertson "minimally competent to stand trial." Dr. McClaren was of the opinion Robertson was competent but noted that "the possibility that he is suffering from symptoms of schizophrenia cannot be completely ruled out" and recommended "a period of inpatient observation to better elucidate his true mental condition."
The majority recognizes that the trial court is required to order a competency hearing on its own motion whenever it has reasonable ground to believe that the defendant is not mentally competent to proceed. Fla. R.Crim. P. 3.210(b). However, the majority ignores the fact that in determining whether a competency hearing is necessary, the question is "`whether there is reasonable ground to believe the defendant may be incompetent, not whether he is incompetent.'" Tingle v. State, 536 So.2d 202, 203 (Fla.1988) (quoting Scott v. State, 420 So.2d 595, 597 (Fla.1982)). The trial court clearly had sufficient information before it at the September 25 hearing to conclude that Robertson may have been incompetent. The trial court acknowledged as much during the hearing.
The fact that in their reports both experts appeared to agree that Robertson was minimally competent to stand trial at the time he was evaluated in May and July of 1992 did not allay the need for a hearing on the question in September. Even where a competency hearing is ordered, the question of competency is for the trial court; expert reports on the subject are merely advisory. Hunter v. State, 660 So.2d 244, 247 (Fla. 1995), cert. denied, ___ U.S. ___, 116 S.Ct. 946, 133 L.Ed.2d 871 (1996).
In arguing that no hearing was required, the State relies, in part, on the fact that Robertson "generally behaved himself" after his disruptive behavior in September. However, the determination of whether sufficient doubt existed to warrant a competency hearing at any material stage of the proceedings must be made based on the facts and circumstances before the court at the time the doubt is alleged to have arisen. Accord United States v. Long Crow, 37 F.3d 1319, 1325 (8th Cir.1994) (in order to mount successful due process challenge, defendant must make showing that the trial judge failed to see the need for a competency hearing when, based on facts and circumstances known to judge at the time, judge should have recognized the need), cert. denied, 513 U.S. 1180, 115 S.Ct. 1167, 130 L.Ed.2d 1122 (1995).
From my review of the record, a reasonable doubt as to Robertson's competency to proceed was created by the information that was before the trial court at the September 25 hearing. As noted above, the court acknowledged as much during the hearing. The State even concedes that "[a]t first the court had some questions about Robertson's competency, but, as the hearing [on the motion *1350 for continuance] progressed, those concerns were dispelled," presumably by the experts' reports and the prosecutors assertions. Once a reasonable doubt was raised, the court had no discretion but to hold a hearing where evidence could be presented and the experts could be questioned. Lane, 388 So.2d at 1025 (trial court has obligation to conduct competency hearing whenever it reasonably appears necessary). The court could not simply defer to expert reports that were at best equivocal or rely on the prosecutor's assertion that Robertson was just "mean."
The ultimate determination of Robertson's competency to proceed was for the trial court. Hunter. Because Robertson was deprived of his due process right to that determination, I would vacate his convictions and remand for retrial after it has been determined that he is competent to stand trial. See Scott, 420 So.2d at 598 (a hearing on defendant's competency to stand trial cannot be held retroactively). However, because my view that a new trial is warranted did not prevail I concur with that portion of the majority opinion that vacates the death sentence and remands for the imposition of a life sentence without eligibility for parole for twenty-five years.
SHAW and ANSTEAD, JJ., concur.
NOTES
[1] § 921.141(5)(d), (h), Fla. Stat. (1993).
[2] The trial court actually considered Robertson's age of "twenty" in mitigation. However, as the State concedes, Robertson was nineteen at the time of the murder.
[3] The eight claims raised by Robertson are: 1) the trial court erred by failing to order a competency hearing; 2) the trial court erred by refusing to suppress Robertson's confessions; 3) the trial court erred by denying challenges for cause to prospective jurors; 4) the evidence was insufficient to support Robertson's convictions for burglary of a conveyance and grand theft of an automobile; 5) the trial court erred by admitting irrelevant and prejudicial victim impact evidence; 6) the trial court erred in finding that the homicide was especially heinous, atrocious, or cruel; 7) the trial court failed to properly weigh the mitigating circumstances, and 8) death is not proportionately warranted in this case.