704 So.2d 516 (1997)
Gerardo MANSO, Appellant,
v.
STATE of Florida, Appellee.
No. 85529.
Supreme Court of Florida.
November 20, 1997.
Rehearing Denied January 16, 1998.
Bennett H. Brummer, Public Defender and, Christina A. Spaulding, Assistant Public Defender, Eleventh Judicial Circuit, Miami, for Appellant.
Robert A. Butterworth, Attorney General and Fariba N. Komeily, Assistant Attorney General, Miami, for Appellee.
PER CURIAM.
We have on appeal the judgment and sentence of the trial court imposing a death sentence upon Gerardo Manso. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm the convictions of guilt. For the reasons expressed, we reverse Manso's death sentence and remand for a new competency determination and penalty proceeding.
Manso was a night shift foreman at Aircraft Modular Products in Miami, where he had worked for six years. He believed he had been treated unfairly in being passed over for a promotion and was concerned about the possibility of losing his job. On October 14, 1993, Manso placed his twelvegauge shotgun in his car. When other employees left the shop for an evening meal, he retrieved the shotgun and five shotgun shells from his car, entered the shop, ground off identifying serial numbers and markings, and cut off the stock of the gun. After modifying the gun, he picked up plastic covers to cover himself because it was raining. He left the building and climbed two separate ladders to the roof. On the way, he loaded five shells into the gun and threw the empty box down a drain. He then waited for Miguel Roque, Jorge Sanchez, Douglas Zamora, Ray Cruz, and George Moussa to return from a computer training class. Manso knew they would return about 9 p.m. While waiting, Manso stationed himself on the roof directly over *517 the area where the vehicle would arrive. When the vehicle arrived, Manso fired directly at four of the occupants. Manso stated in his confession that he aimed at the person in the vehicle whom he believed to be Jorge Sanchez and fired two shots, intending to kill that person. That person actually was Miguel Roque, who died as a result of the gunshot. When Douglas Zamora got out of the car, Manso fired one shot at him, causing severe injuries. When Ray Cruz got out of the car, Manso also fired one shot at him, causing severe injuries. Next Manso shot through the roof of the vehicle, intending to kill George Moussa, who was not injured because Roque's body was on top of him. Then Manso discarded the plastic, threw the gun into a yard beside the building, descended the two ladders, and returned to the shop. Manso mingled with other employees. When police arrived, Manso said he had seen a Cadillac carrying three Colombians who asked about Jorge Sanchez just before the shooting. Manso knew Sanchez had been arrested on drug charges, and Manso wanted police to believe the shooting was narcoticsrelated. Approximately a week after the shootings, after the police confronted him with evidence linking him to the murder weapon, Manso confessed to the shooting. He told police that he intended to kill Sanchez and Moussa because they were making his job impossible and he heard a rumor that he was going to be fired. Manso maintained that he did not intend to kill Cruz, Zamora, or Roque.
A jury found Manso guilty of one count of first-degree murder and four counts of attempted first-degree murder. The jury recommended a death sentence by a ten-to-two vote. The trial court followed the jury's recommendation and sentenced Manso to death, finding the following aggravating circumstances: (1) Manso had previously been convicted of another capital felony or of a felony involving the use or threat of violence to the person[1] (murder of his wife's lover, Luis Gutierrez, and four contemporaneous attempted murders); (2) Manso knowingly created a great risk of death to many persons;[2] and (3) the murder was committed in a cold, calculated, and premeditated manner (CCP).[3] The court found the following statutory mitigators: (1) that Manso was under the influence of extreme mental and emotional disturbance;[4] (2) that his capacity to appreciate the criminality of his acts and conform his conduct to the requirements of the law was substantially impaired.[5] The judge found the following nonstatutory mitigators: (1) Manso had a history of childhood abuse and neglect; (2) was a good parent and family man; (3) cooperated with the police; (4) was contrite and remorseful; and (5) had a capacity for rehabilitation.
In this direct appeal, Manso raises twelve claims.[6] We find dispositive his claim that the trial court should have granted a continuance during the penalty phase so that Manso's competence could be further examined. Because we are compelled to order a new sentencing proceeding upon a new determination *518 that Manso is competent to proceed, we do not reach the other penalty-phase claims.
Manso raises only one guilt-phase claim. This claim challenges the court's denial of motions for acquittal of the charges of attempted first-degree murder as to Cruz and Zamora because the State failed to establish that Manso had a specific intent to kill Cruz and Zamora. We reject this contention because the record contains sufficient facts regarding Manso's intent. Thus, we conclude that the jury could determine the charges of attempted first-degree murder. Sireci v. State, 399 So.2d 964, 967 (Fla.1981). Therefore, we affirm Manso's convictions of one count of first-degree murder and four counts of attempted first-degree murder.
In his competency claim, Manso contends that the court erred during the penalty phase in failing to continue the proceedings for hospitalization and further observation to determine Manso's competency as the two examining mental health experts recommended. We agree that a continuance was required because of the testimony of the two psychologists and because of testimony of other witnesses as to additional facts relating to Manso's psychological status.
During the penalty proceeding, the trial court correctly assessed Manso's behavior, along with relevant testimony, and found that a competency hearing was necessary. See Fla. R.Crim. P. 3.210; Pridgen v. State, 531 So.2d 951, 954 (Fla.1988). First, Manso's sister and brothers testified to the following: that Manso's mother was a paranoid schizophrenic and was periodically hospitalized; that Manso, while in the Cuban military, had received psychiatric treatment, was hospitalized and given electric shock treatments; that his siblings observed Manso to be depressed and thought he acted strangely; that Manso often expressed the belief that people were laughing at him and ridiculing him; and that, for a number of years, Manso had been self-medicating to calm himself with his mother's anti-psychotic drugs. Manso then took the stand, admitted shooting his coworkers, and expressed remorse. Manso also testified as to his personal history, including his mother's schizophrenia and his own psychological problems. During direct examination, Manso told the jury he had no right to live, and the following exchange occurred:
Q. Let me ask you this, do you think that you're crazy?
A. Huh? No, no.
Q. You don't think so?
A. No. Who knew they're sitting thereeverybody there and they're the people above them and now they make themselves be good, and they think about one thing, in what way have they put me there in order be able to kill five people. Yeah, that is all and I don't want to keep talking. I already asked for the electric chair so everyone would be happy. What else do they want?

MR. CARTER: I don't have anything further.

THE DEFENDANT: And that way I'm going to go to a place where no one can bother me and I can be calm.
The prosecutor then attempted to cross-examine Manso, who stated, "Tell the fat lady I don't want to answer any of her questions." Manso threw the witness-stand microphone at the prosecutor. The court excused the jury. Manso then got down on the floor and began screaming and shaking violently.
The court granted defense counsel's oral motion for recess in order to hold a competency evaluation. For the purpose of determining competency, the court immediately appointed psychologists Dr. Merry Haber and Dr. Lazaro Garcia, who had been retained by the defense and the prosecution, respectively, to testify at the penalty phase. Dr. Haber and Dr. Garcia were at the courthouse at the time and performed their evaluations that afternoon. The two psychologists interviewed Manso for a period of about two hours.
Later that same day, each psychologist orally reported findings to the court in an evidentiary hearing in which both experts testified. Dr. Haber stated that she concluded Manso was not competent to proceed because he had experienced a psychotic break and should be hospitalized and medicated until restored to competency. Dr. Garcia *519 disagreed as to the psychotic break and concluded that he had a "strong suspicion that [Manso was] malingering" because Manso's statements were self-serving. Dr. Garcia concluded that Manso was competent, but also stated: "I discussed this with Dr. Haber, and I think in the case of prudence that involuntary hospitalization for observation is recommended." The trial court also heard testimony from an interpreter and two corrections officers who had contact with Manso. The prosecution argued that Manso was malingering, and defense counsel argued that Manso should be hospitalized based on both psychologists' testimony. The court found Manso to be competent to proceed based upon testimony by Dr. Haber and Dr. Garcia and upon the court's own observation that Manso was feigning psychosis.
In view of the particular circumstances of this case, we hold that the court abused its discretion in failing to grant a continuance based on the recommendations of the two psychologists that Manso should be observed in a hospital setting. Lane v. State, 388 So.2d 1022,1025-26 (Fla.1980).
Accordingly, we affirm Manso's convictions of guilt but reverse his death sentence and remand to the trial court for a complete new penalty proceeding on the first-degree murder conviction with new counsel representing him. Manso's new sentencing may proceed only after the circuit court determines that he is competent to proceed in accord with Florida Rules of Criminal Procedure 3.211 and 3.212.[7]
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, HARDING, WELLS and ANSTEAD, JJ., and
GRIMES, Senior Justice, concur.
NOTES
[1] § 921.141(5)(b), Fla. Stat. (1993).
[2] § 921.141(5)(c), Fla. Stat. (1993).
[3] § 921.141(5)(i), Fla. Stat. (1993).
[4] § 921.141(6)(b), Fla. Stat. (1993).
[5] § 921.141(6)(f), Fla. Stat. (1993).
[6] Manso claims that: (1) the trial court erred in failing to grant Manso's motion for judgment of acquittal on two charges of attempted first-degree murder; (2) the trial court erred in finding Manso competent to proceed at the penalty phase without granting a continuance for further observation; (3) the State improperly used the competency examination to rebut mental mitigation; (4) the testimony of a prosecution expert, Dr. Garcia, exceeded the proper scope of rebuttal; (5) Manso was denied his right to counsel and to a fundamentally fair sentencing hearing because trial counsel's ineffectiveness is apparent from the record and counsel was suspended from practice in Florida three days after Manso was sentenced; (6) the trial court erred in restricting Manso's ability to elicit testimony regarding his family history of mental illness; (7) the trial court erred in permitting the State's rebuttal witness to testify to a previously undisclosed oral statement by Manso; (8) the trial court erred in sustaining the State's objection to defense counsel's closing argument regarding alternatives to the death penalty; (9) the trial court erred in imposing a death sentence; (10) the trial court erred in relying on the nonstatutory aggravator of future dangerousness; (11) the standard jury instructions misled the jury as to the significance of its verdict; and (12) Florida's death penalty statute is unconstitutional.
[7] We note that subsequent to this trial, the Superintendent of Union Correctional Institution petitioned to have Manso involuntarily committed to the Corrections Mental Health Institution in Chattahoochee. On September 5, 1995, the circuit court in Union County granted the petition, finding that Manso was suffering from major depression with psychotic features.