COMMONWEALTH *vs.* MYLES J. CONNOR, JR.

Suffolk.   May 29, 1980. — September 5, 1980.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Practice, Criminal,* Assistance of counsel.  *Conflict of Interest.  Waiver.*

Although a judge had the authority, in the interest of the proper admini-
stration of justice, to disqualify counsel for a defendant over the de-
fendant's objection because of the potential for conflict of interests, the
disqualification order was vacated and the matter remanded for fur-
ther proceedings where the judge neither set forth his conclusions as to
whether the defendant's waiver of his right to effective counsel was
unequivocal and knowing, nor the reasons for his disqualification of
counsel. [502-506]

INDICTMENTS found and returned in the Superior Court
Department on November 20, 1979.

A pretrial motion was heard by *Brogna,* J., and questions
of law were reported by him to the Appeals Court.  The
Supreme Judicial Court granted a request for direct review.

*Edward B. Hanify (Jess T. Fardella* with him) for the
defendant.

*Philip T. Beauchesne,* Assistant District Attorney *(Mat-
thew L. McGrath, III,* Legal Assistant to the District At-
torney, with him) for the Commonwealth.

ABRAMS, J.  The basic issue presented by the report of a
Superior Court judge is whether a judge may disqualify
counsel for the defendant over the defendant's objection.
Myles J. Connor, Jr., was charged in two indictments with
being an accessory before the fact to murder in the first
degree.  G. L. c. 274, § 2.  Martin K. Leppo entered his
appearance for the defendant on both indictments.  Ap-
proximately six weeks later Mr. Leppo filed a "motion for
disclosure to determine conflict of interest" accompanied by
an affidavit of Connor.  After a series of hearings the judge

ruled that Mr. Leppo was disqualified from representing the defendant in his upcoming trial. The judge reported his ruling to the Appeals Court,[1] and we granted the defendant's application for direct review. We vacate the judge's order and remand the matter to the Superior Court for further proceedings.

We recount the facts as put to the judge. Since 1975 the defendant has been represented by Mr. Leppo and his associate Anthony M. Traini. The main witness for the Commonwealth is to be one Thomas Sperazza. Mr. Leppo and Mr. Traini have also represented Sperazza in the past.[2] The defendant's motion sought a ruling that Mr. Leppo was not disqualified from representing Connor by reason of Mr. Leppo's past representation of Sperazza.

Hearings on this motion were held on January 24, February 7, and February 19, 1980. At the hearing on January 24, 1980, the prosecutor stated that Sperazza would be the chief government witness against the defendant in the

---

[1] The judge has reported two questions. "Although a judge may report specific questions of law in connection with an interlocutory finding or order, the basic issue to be reported is the correctness of his finding or order. [See Mass. R. Crim. P. 34, 378 Mass. 905 (1979).] Reported questions need not be answered in this circumstance except to the extent that it is necessary to do so in resolving the basic issue." *McStowe* v. *Bornstein,* 377 Mass. 804, 805 n.2 (1979).

The two questions reported are: "1. On the facts and circumstances here presented, does the defendant have the right effectively to waive any later contention regarding the effectiveness of Mr. Leppo, and affirmatively to elect to be represented by Mr. Leppo notwithstanding that Mr. Leppo's prior representation of a government witness may impair his ability to cross-examine that witness?

"2. On the facts and circumstances here presented, did the Court have the authority to order Mr. Leppo to withdraw over the defendant's objection, where the defendant is aware of the perils of his preferred course of conduct, has elected to incur them nevertheless, and has agreed to waive any later claim of error arising out of allowance of his request?"

[2] Mr. Leppo represented Sperazza on an indictment charging murder in the first degree and on the appeal from Sperazza's conviction in that case for murder in the second degree. Mr. Leppo also represented Sperazza on a charge of armed robbery of a bank. Mr. Traini represented Sperazza in a number of disciplinary and classifications hearings at the Massachusetts Correctional Institution at Walpole from 1976 to 1978.

instant cases. Mr. Leppo informed the judge that he and Mr. Traini had represented Sperazza, and that their entire representation had ended by January, 1980. Mr. Leppo further informed the judge that he and Sperazza had never discussed any of the facts relating to the present indictment.

At the hearing, the defendant, age thirty-six, with almost three years of college education, told the judge that he wanted Mr. Leppo to represent him regardless of possible conflicts of interest. The defendant offered to sign a formal waiver.

The judge explained the possibility of a conflict of interest to the defendant and expressed concern whether a claim of ineffectiveness of counsel could ever be waived, particularly at an early stage of the proceedings where it was impossible to predict with any accuracy what a witness's testimony would be or what conflict the dynamics of trial might bring forth. The judge offered the defendant his choice of other persons as counsel, but the defendant declined. At the end of the hearing, the judge took the motion under advisement.

On February 7, the prosecutor informed the court that Mr. Leppo had in the past represented another witness, Robert Fitzgerald as well as an unapprehended codefendant, Ralph Petrozziello. The judge ordered Mr. Leppo disqualified from acting as Connor's counsel on the two indictments then pending.

On February 19, the judge was informed that in addition to Sperazza and Fitzgerald, Mr. Leppo had also represented prospective witnesses Debra Harding Sperazza and Martha Farante. The name of another prospective witness, Thomas Maher, was familiar to Mr. Leppo, but he was unable to state definitely whether his office had represented Maher in the past. Finally, Mr. Leppo's office had previously represented John Stokes, now deceased. The Commonwealth stated that it planned to offer some statements by Stokes at Connor's trial.

The judge specifically found that Mr. Leppo's representation of all these individuals had ended and that their prior cases were unrelated to the case at bar. None of these past

appearances by counsel involved any communications bearing on the subject matter of the present cases with one possible exception.[3]

The defendant again told the judge he wanted Mr. Leppo to represent him regardless of any conflicts of interest. The judge refused to revoke his order disqualifying Mr. Leppo. The judge then reported his ruling. See note 1, *supra.*

The defendant claims that he has a constitutional right to counsel of his choice. The right, however, is not absolute, and may, in some circumstances, be subordinate to the proper administration of justice. "Choice of counsel should not be unnecessarily obstructed by the court, . . . but where there is a serious possibility that a definite conflict of interest will arise, the necessities of sound judicial administration require the court to take command of the situation." *United States* v. *Bernstein,* 533 F.2d 775, 778 (2d Cir.), cert. denied, 429 U.S. 998 (1976). Accord, *United States* v. *Laura,* 607 F.2d 52, 56 (3d Cir. 1979); *Abraham* v. *United States,* 549 F.2d 236, 239 (2d Cir. 1977). See *Commonwealth* v. *Dabrieo,* 370 Mass. 728, 739 (1976). The issue is whether this case requires such drastic action by the judge.

Counsel is vital to the adversary process. A judge therefore must have some discretion to disqualify a conflict-burdened attorney when the conflict might well restrict or prevent counsel's fulfilment of his role. A judge would be hampered in the exercise of his constitutional duties if he could not act to protect counsel's vital function. Such power is "to be exercised sparingly and when the need is apparent and pressing and only after careful consideration, but with the power goes the duty to exercise it on proper occasions." *Collins* v. *Godfrey,* 324 Mass. 574, 579 (1949).

Connor does not quarrel with the power of a judge to disqualify counsel if the proper administration of justice is

---

[3] Mr. Leppo and Fitzgerald may have had a conversation bearing on the pending indictments. The judge pointed out to Connor that Mr. Leppo might be restricted in his cross-examination of Fitzgerald as a result of this conversation. The defendant claimed he understood this and that he still wished to be represented by Mr. Leppo.

threatened. Connor contends that the sole basis for the judge's order was a mistaken view that in these circumstances a defendant could not execute a valid waiver. We do not agree. As we read the record it is equally inferable that the judge acted to protect the fair and proper administration of justice, and if the judge found that Mr. Leppo should be disqualified for this reason, he had authority to do so.[4] As the record is unclear, we consider the issue of waiver.

A defendant may waive his right to the assistance of an attorney "unhindered by a conflict of interests." *Holloway* v. *Arkansas,* 435 U.S. 475, 483 n.5 (1978). The defendant's ability to waive the right to conflict-free counsel arises, first, from a criminal defendant's personal right to make his defense, with its corollary right of self-representation, *Faretta* v. *California,* 422 U.S. 806, 818 (1975); *Commonwealth* v. *Davis,* 376 Mass. 777, 787 n.12 (1978), and, second, from his right to be represented by counsel of choice. *Faretta* v. *California, supra* at 833. *Powell* v. *Alabama,* 287 U.S. 45, 53 (1932). *United States* v. *Liddy,* 348 F. Supp. 198, 199 (D.C. Cir. 1972). Cf. *Commonwealth* v. *Cavanaugh,* 371 Mass. 46 (1971). See generally *United States* v. *Laura,* 607 F.2d 52, 55 (3d Cir. 1979). To hold otherwise would be patronizing.

The defendant argues that Mr. Leppo's past representation of the prosecution witnesses on unrelated matters creates only a possibility of conflict of interest, and that such a possibility is not serious enough to justify interference with his right to select his attorney. He adds that, since Mr. Leppo's representation of the prospective witnesses (and codefendant Petrozziello) has ended, the danger that counsel will be hampered by "contemporaneous divided loyalties," is minimal. *Commonwealth* v. *Soffen,* 377 Mass. 433, 437-438 (1979). Compare *Commonwealth* v. *Cobb,* 379 Mass. 456

---

[4] The proper administration of justice embraces such matters as protection of the witnesses and the appearance of fairness, as well as the rights of the defendant.

(1980). See *Theodore* v. *New Hampshire,* 614 F.2d 817 (1st Cir. 1980). Connor contends that on this record "there is no clear indication that a knowing and intelligent waiver of the right to effective counsel in these circumstances would adversely affect the defendants', the prosecutor's or the public's interest in a fair trial." *United States* v. *Garcia,* 517 F.2d 272, 277 n.4 (1975).

The record, however, is too meager for us to draw such a conclusion. It reveals that the judge engaged in extended colloquies with the defendant. The judge told the defendant that conflicts might arise during trial, and that the uncertainties of a trial made it unclear precisely how such conflicts might arise or how they might affect the defense strategy. The judge then interrogated the defendant to determine whether the defendant understood these potential conflicts, whether the defendant understood that continuing with conflict-burdened counsel could have adverse consequences to his defense, and lastly whether the defendant understood his right to other counsel.[5] See *United States* v. *Lawriw,* 568 F.2d 98, 104 (8th Cir. 1977), cert. denied, 435 U.S. 969 (1978); *United States* v. *Armedo-Sarmiento,* 524 F.2d 591, 592 (2d Cir. 1975).

Most of the defendant's answers to the judge's inquiries indicate an unequivocal waiver. However, the defendant also volunteered that he was "not well versed in the law." The judge could have concluded from some of Connor's responses that his waiver was equivocal or that he was laying the groundwork for a later claim that his waiver was not knowing and intelligent. In either case, the judge would have been justified in ruling that Mr. Leppo was disqualified. There can be no strings attached to an effective

---

[5] The judge named three attorneys, all experienced in the trial of criminal cases. He volunteered to talk with them if the defendant so desired. The defendant remained adamant in his desire to be represented by Mr. Leppo. The defendant did not have the benefit of independent counsel during the colloquies. It might be sensible in these circumstances for the judge to ensure that a defendant has had the advice of independent counsel before finding the defendant's waiver valid.

waiver. See *United States* v. *Bernstein*, 533 F.2d 775, 788
(2d Cir. 1976).[6]

In a case where a conflict of interest arises from defense
counsel's past or present representation of prospective wit-
nesses, the judge should employ the same type of prophylac-
tic measures required by *Commonwealth* v. *Davis*, 376
Mass. 777, 784-785 (1978). In the present case, the judge's
interrogation of the defendant was adequate to inform the
defendant of the "risks and potential dangers" of Mr. Lep-
po's conflicts. The defendant's responses, however, were
not always clear cut on the issue of waiver.

Since the judge neither set forth his conclusions on that
issue nor the reasons for his disqualification of Mr. Leppo,
we think it prudent to vacate his order and remand this
matter to the Superior Court for further proceedings not in-
consistent with this opinion. In ruling on these issues in any
future hearing the judge should articulate the reasons for his
rulings as well as the facts on which he relies.

*So ordered.*

---

[6] During some parts of the proceedings it appears to us that the defend-
ant believed that his insistence on Mr. Leppo as his counsel would place
him in a "heads I win, tails you lose" situation. A trial judge has ample
authority to protect himself and the Commonwealth from such manipula-
tive behavior.