# COMMONWEALTH *vs.* JOSEPH RAY JORDAN.

No. 96-P-1103.

Hampshire. March 8, 2000. - August 10, 2000.

Present: PORADA, DREBEN, & DUFFLY, JJ.

*Conspiracy. Evidence,* Conspiracy, Operative words. *Attorney at Law,* Disqualification, Conflict of interest, Withdrawal. *Waiver. Conflict of Interest. Practice, Criminal,* Assistance of counsel, Continuance, Instructions to jury, Argument by prosecutor. *Constitutional Law,* Assistance of counsel. *Homicide.*

At the trial of indictments, the Commonwealth's evidence was sufficient to prove that the defendant combined with another with the intention of murdering the victim, and statements of the coconspirator were properly admitted either as an exception to the rule against hearsay or as nonhearsay to prove the existence of a conspiracy. [805-806]

An indigent defendant properly may assert his interest in continued representation by an appointed attorney who sought to withdraw on account of a conflict of interest. [807-808]

There was no error in a judge's allowing, out of concern to protect the fair and proper administration of justice, a criminal defense lawyer to withdraw from representation of an indigent defendant, over the defendant's objection and waiver of his right to have counsel unhindered by a conflict of interest [808-811], and no substantial risk of a miscarriage of justice arose from the defendant's not having counsel at the hearings on the attorney's motion to withdraw. [811]

At a criminal trial, the judge did not abuse his discretion in denying the defendant's second trial counsel's motion to withdraw filed two weeks before trial [812].

The record of a criminal proceeding reasonably supported the conclusion that the defendant had abandoned his request to represent himself at trial. [813-814]

At a criminal trial, there was no substantial risk of a miscarriage of justice created by the judge's failure to explicate the elements of murder when instructing the jury on conspiracy to murder, where the unlawfulness of the proposed killing was not contested at trial. [814-815]

The prosecutor's remark in his closing argument regarding the difficulty of deciding issues of credibility was not an impermissible indirect comment on the defendant's failure to testify [816], nor did the prosecutor improperly endorse the credibility of the victim [816].

At the trial of indictments, the prosecutor should not have invited the jury, in

his closing argument, to put themselves in the position of the victim nor should he have suggested that the Commonwealth expected guilty verdicts; however, the improprieties did not create a substantial risk of a miscarriage of justice in light of the overwhelming evidence against the defendant and the judge's instructions to the jury. [816-817]

In a criminal case, any omissions of trial counsel did not create a substantial risk of a miscarriage of justice, and there was no basis, therefore, for any claim of ineffective assistance of counsel. [817]

INDICTMENTS found and returned in the Superior Court Department on October 7, 1991.

The cases were tried before *William H. Welch*, J.

*John M. Thompson* for the defendant.

*Judith Ellen Pietras*, Assistant District Attorney, for the Commonwealth.

DREBEN, J. A woman in Florida, Rochelle Kaminski, telephoned Massachusetts State police stating that her best friend, Carol Leith, had been kidnapped and was going to be killed. Leith was being held in a car by the defendant and one Edgar Smith on route 91 in Massachusetts, going north. Alerted by the call, police officers found Leith's empty car in a rest area. Nearby, they saw someone waving in a parked car. When that vehicle began to move, the officers followed and forced it to stop. Huddled in the back seat was a woman (Leith), crying, shaking, and mouthing the words "help me, help me." The defendant, who was driving, was arrested, as was Smith, seated in the front passenger seat. Each was subsequently charged with kidnapping, assault with a dangerous weapon, conspiracy to commit murder, and assault and battery. The men were tried separately[1]; the defendant was found guilty on all four charges. Only the defendant's appeal is before us. He claims numerous errors, including violations of his right to counsel, insufficient evidence to convict him of conspiracy to commit murder,[2] improper closing argument by the prosecutor, and improper instructions by the trial judge. We affirm his convictions.

1. *Facts.* Viewing the evidence in the light most favorable to the Commonwealth, *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979), the jury were warranted in finding the fol-

---

[1]Smith was convicted of kidnapping and assault and battery.

[2]The defendant filed a supplemental brief pro se in which he raised this issue, among others.

lowing. Leith, at the request of her brother, the defendant, drove from Florida to Massachusetts to help him find his four year old twins as his former wife would not let him see them. After spending several days scouting, in her car, the homes of the defendant's former wife and of his former father-in-law, Leith became suspicious that the defendant was about to do something illegal. When she informed him that she was going to return to Florida, he told her that she could not leave until the job was done. He threatened to kill her husband and two of her friends if she left. Later, each in their separate cars drove to a rest stop. When communication by car phone became difficult, the defendant induced Leith to get in the back seat of his car. Once there, he wrenched her keys from her hands and asked Smith to lock the doors. While Smith held Leith down, the defendant punched her in the face. He asked Smith for a knife, put it in his fist and hit Leith over the head. He told her that she was hurting his kids and that he was going to kill her. Smith, at the defendant's bidding, took a pillow, shoved Leith down onto the seat, and covered her face. She briefly lost consciousness.

When she came to, she heard the defendant tell Smith that she should be killed with a baseball bat and heard "both of them" discussing that she should be dumped fifty feet in the woods. While they were driving, the defendant sometimes reached back and hit her as Smith held her. When Leith begged Smith to let her go, Smith replied, "We've got to get rid of this screaming bitch."

They subsequently returned to the rest stop where Leith's car was parked. The defendant suggested to Smith, "Maybe we should just stab her and dump her in the back seat." Smith demurred, saying, "If we kill her now, then we'll have to leave off to Chicago now, and I'm F-ing tired. So let's wait until morning." The defendant then added that Leith had "better thank him [Smith] for letting [her] live until morning."

While at the rest stop, the defendant, using his car phone, called Leith's friend Rochelle Kaminski in Florida and gave Leith the phone to tell Kaminski what a mistake she, Leith, had made by not finding his children. When Leith blurted out that she was on route 91 north, the defendant snatched the phone and told Kaminski that he would kill her after he killed Leith. Kaminski testified that she heard another male take the phone and say, "they were going to kill Carol and they were coming to kill me next." Leith overheard Smith talking to Kaminski. As

indicated earlier, Kaminski called the police, and the two men were apprehended.

2. *Sufficiency and admissibility of evidence on conspiracy to murder charge.* We treat these issues first as they, more than the others, are dependent on the foregoing evidence. A conspiracy requires a "combination of two or more persons, by some concerted action [or plan], to accomplish some criminal or unlawful purpose, or to accomplish some purpose, not in itself criminal or unlawful, by criminal or unlawful means." *Commonwealth* v. *Hunt*, 4 Met. 111, 123 (1842). Here, the Commonwealth had to prove that the defendant combined with Smith with the intention of murdering Leith. *Commonwealth* v. *Cantres*, 405 Mass. 238, 244 (1989).

The conversations between the defendant and Smith recounted by Leith were not, as argued by the defendant, solely attributable to the defendant. In context, Smith's comment concerning the need to get rid of Leith could reasonably be viewed as neither a joking nor an exaggerated remark. His statements to Kaminski and his comment about postponing the murder could reasonably be considered by the jury as indicating the intent of both Smith and the defendant to act in concert to murder Leith.

In his supplemental brief, the defendant faults his trial counsel for not objecting to the introduction of Kaminski's testimony on the ground that what Smith stated to her was inadmissible hearsay. He claims that the Commonwealth failed to establish by evidence independent of Smith's hearsay statements that Smith was involved in the conspiracy to murder Leith, and that it was therefore error to admit Smith's statements under the coconspirator exception to the hearsay rule.[3] There was, however, sufficient nonhearsay evidence to warrant a reasonable inference that the two men who had jointly committed other offenses also had conspired to commit murder. See *Commonwealth* v. *Nascimento*, 421 Mass. 677, 681 (1996). See also *Commonwealth* v. *Borans*, 379 Mass. 117, 145-146 n.26 (1979). These other offenses, such as Smith almost suffocating Leith, locking her in the vehicle, holding her down while the defendant punched her, and giving the defendant a knife for use against

---

[3]The exception provides that "a conspirator's extrajudicial statement is admissible against a coconspirator if made during the course of and in furtherance of the conspiracy . . . once the Commonwealth establishes the existence of the conspiracy by a preponderance of other admissible evidence." *Commonwealth* v. *McLaughlin*, 431 Mass. 241, 248 (2000).

Leith, were also indicative of the conspiracy to commit murder. "[T]he mere fact that evidence tends to prove the commission of some other crime does not render it inadmissible as long as it is relevant to the crime being tried." *Id.* at 148, quoting from *Commonwealth* v. *Eagan*, 357 Mass. 585, 589 (1970). Thus, even if the recounting of Smith's statements is considered to be hearsay, the testimony was admissible under the coconspirator exception to the hearsay rule.

Moreover, and more significant, both Kaminski's and Leith's testimony as to Smith's statements did not involve hearsay. Smith's words themselves are evidence of a legal relationship and are admissible not for the truth of the matters asserted, "but as proof of an 'operative' statement, i.e., existence of a conspiracy. As such, [they are] not hearsay." *Commonwealth* v. *McLaughlin*, 431 Mass. 241, 246 (2000). *Telecon, Inc.* v. *Emerson-Swan, Inc.*, 17 Mass. App. Ct. 671, 673 (1984) (contract). Liacos, Handbook of Massachusetts Evidence § 8.2. 5 (7th ed. 1999). What counts is the fact that such words were spoken. See 5 Weinstein & Berger, Evidence § 801.11[3] (2d ed. 2000); 4 Mueller & Kirkpatrick, Federal Evidence § 385 (2d ed. 1994 & Supp. 1999).

Similar testimony was held not to be hearsay in *State* v. *Henry*, 253 Conn. 354 (2000). A former passenger in a car with the defendant and another was permitted to testify that he had heard the other person say that if they saw the intended victim "it was on," meaning "they'd start shooting." The court held that the statement "was not hearsay because it was admissible as circumstantial evidence of the conspiracy, not to establish its truth. The statement made by [the other passenger in the car] to the defendant was evidence of the agreement to shoot [the intended victim] in which both the defendant and [the other person] had played a part." *Id.* at 365.

There was thus no error, let alone a substantial risk of a miscarriage of justice or ineffective assistance of counsel, see *Commonwealth* v. *Curtis*, 417 Mass. 619, 624-625 n.4 (1994), in admitting the evidence of Smith's statements, and there was no error in the denial of the defendant's motion for a required finding of not guilty on the charge of conspiracy to commit murder.

3. *Violation of right to counsel.* a. On the day of the defendant's arraignment, October 15, 1991, Attorney Alan Rubin, regional supervisor of the Hampshire County office of the

Committee for Public Counsel Services (CPCS), was appointed to represent the defendant. After being informed less than a week before the day scheduled for trial that the Commonwealth intended to call a new witness to testify to statements allegedly made by the defendant while both men were incarcerated, Mr. Rubin prepared a motion to withdraw based on a conflict of interest. His motion set forth the following. The witness named by the Commonwealth was the husband and codefendant of a woman represented by an associate of Mr. Rubin. In his capacity as regional supervisor, Mr. Rubin had discussed the woman's cases with his associate on various occasions.

The prosecutor in the defendant's case had informed Mr. Rubin that, in return for the witness's cooperation, the Commonwealth would seek a reduction of the witness's sentence and the dismissal of all charges against his wife. This created a conflict because one client of the office (the wife of the witness) was to receive a benefit at the expense of the defendant. Moreover, the wife's counsel had to be conflict-free to enable him to ensure that her husband's agreement with the Commonwealth concerning his testimony in the defendant's case was enforced. There was an additional conflict because of Mr. Rubin's supervisory role. Information obtained from the witness's wife could be used in cross-examination of her husband to her detriment. Were Mr. Rubin to limit his cross-examination of the husband to prevent any possible use of information gained from his wife, this would be detrimental to the defendant. Mr. Rubin ended his motion as follows: "For all the above reasons, counsel *must* be allowed to withdraw in this matter" (emphasis supplied).

The motion was heard on April 28, 1992, at which time the Commonwealth opposed the motion, and the defendant, too, requested that Mr. Rubin not be permitted to withdraw. Another hearing on the matter was held on May 4, 1992. Mr. Rubin informed the judge that he had conferred with the other attorneys in his office, the chief counsel of CPCS, and an attorney at the Board of Bar Overseers. They all had agreed that Mr. Rubin was in a "conflicted situation" and he "was instructed that he had no choice [but to withdraw] under that situation." The judge allowed the motion to withdraw.[4]

The defendant argues that he was entitled to waive and did

---

[4]It would have been helpful for the judge to have made findings. See *Commonwealth* v. *Connor*, 381 Mass. 500, 506 (1980). He did state, however, in

waive the right to have counsel unhindered by a conflict of interest. We assume for purposes of argument that there was here a sufficient, voluntary, knowing, and intelligent waiver or that such a waiver would have been forthcoming. The Commonwealth counters that waiver is irrelevant as Mr. Rubin was appointed counsel. Since the right to appointed counsel does not include the right to dictate who shall be appointed, the defendant, in the view of the Commonwealth, has no legal basis for urging error in the judge's disqualification of counsel. We disagree. In an analogous situation, the California Supreme Court rejected the claim that an indigent defendant has no cause to complain about the removal of his attorney, noting that the attorney-client relationship:

> "is independent of the source of compensation . . . . [O]nce counsel is appointed to represent an indigent defendant, whether it be the public defender or a volunteer private attorney, the parties enter into an attorney-client relationship which is no less inviolable than if counsel had been retained. To hold otherwise would be to subject that relationship to an unwarranted and invidious discrimination arising merely from the poverty of the accused."

*Smith* v. *Superior Ct.*, 68 Cal. 2d 547, 561-562 (1968). See *Morris* v. *Slappy*, 461 U.S. 1, 22-23 & n.5 (1983) (Brennan, J., concurring in result) ("considerations that may preclude recognition of an indigent defendant's right to choose his own counsel . . . should not preclude recognition of an indigent defendant's interest in continued representation by an appointed attorney with whom he has developed a relationship of trust and confidence").[5]

Relying on *Commonwealth* v. *Connor*, 381 Mass. 500, 504

response to the Commonwealth's argument that, if anything, the defendant would benefit from the dual representation, that he did not see how Mr. Rubin's "dilemma of either limiting his cross-examination of [the witness] or using information that he received as a result of his partner's representation of [the witness's wife] . . . work[s] in favor of [the defendant]." He added that the non-use of the information he received as a result of representing the witness's wife "directly goes to the [defendant's] jeopardy."

[5]Cases elsewhere support this view. See *McKinnon* v. *State*, 526 P.2d 18, 22-23 (Alaska 1974); *State* v. *Madrid*, 105 Ariz. 534, 536 (1970); *Clements* v. *State*, 306 Ark. 596, 608 (1991); *Harling* v. *United States*, 387 A.2d 1101, 1105-1106 (D.C. 1978); *Finkelstein* v. *State*, 574 So. 2d 1164, 1167-1168 (Fla. Dist. Ct. App. 1991); *English* v. *State*, 8 Md. App. 330, 335 (1969); *People* v.

(1980), and *Commonwealth* v. *Goldman*, 395 Mass. 495, 505-506, cert. denied, 474 U.S. 906 (1985), the defendant points out that disqualification of conflict-ridden counsel is a "drastic action" "to be exercised sparingly and when the need is apparent and pressing and only after careful consideration." *Connor*, 381 Mass. at 503, quoting from *Collins* v. *Godfrey*, 324 Mass. 574, 579 (1949). It is only to be exercised in a rare instance. *Goldman*, 395 Mass. at 508.

Those decisions, however, do not indicate that the judge was in error in allowing Mr. Rubin's motion. Both cases acknowledge that a judge must have some discretion to disqualify a conflict-burdened attorney to protect the fair and proper administration of justice and, in each of the cases, the court left the door open to the trial judge to determine whether he or she on remand should exercise discretion to override the defendant's waiver, should it be exercised. See *Connor*, 381 Mass. at 504, 506; *Goldman*, 395 Mass. at 508.

Moreover, unlike those cases, here, counsel himself sought withdrawal and, after seeking advice from knowledgeable sources, felt required by the Canons of Ethics and Disciplinary Rules to withdraw. See S.J.C. Rule 3:07, Canon 4, DR 4-101, as appearing in 382 Mass. 778 (1981) (Preservation of Confidences and Secrets of a Client); S.J.C. Rule 3:07 Canon 5, DR 5-105, appearing in 382 Mass. 781 (1981) (Refusing to Accept or Continue Employment if the Interests of Another Client May Impair the Independent Professional Judgment of the Lawyer).[6] Our cases encourage "deference to the exercise of an attorney's best judgment as to whether such employment will

---

*Johnson*, 215 Mich. App. 658, 665-666 (1996); *Matter of Welfare of M.R.S.*, 400 N.W.2d 147, 152 (Minn. Ct. App. 1987); *In re Civil Contempt Proceedings Concerning Richard*, 373 N.W.2d 429, 432 (S.D. 1985); *Stearnes* v. *Clinton*, 780 S.W.2d 216, 221-222 (Tex. Crim. App. 1989). The appellate districts in Illinois are divided on this issue. Compare *People* v. *Davis*, 114 Ill. App. 3d 537, 542-545 (1983) (1st Dist.), with *People* v. *Moore*, 71 Ill. App. 3d 451, 453 (1979) (4th Dist.), and *People* v. *Robinson*, 87 Ill. App. 3d 621, 629 (1980) (3d Dist.). See also G. L. c. 211D, § 9(*a*).

[6]The former Canons of Ethics and Disciplinary Rules that were in effect at the time of Mr. Rubin's motion were replaced, effective January 1, 1998, by the Massachusetts Rules of Professional Conduct. See particularly rule 1.7(a) & (b), 426 Mass. 1330-1331 (1998), which provides that a lawyer shall not represent a client "if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person . . . unless: (1) the lawyer reasonably believes the representation will not be adversely affected; and (2) the client consents after consultation."

bring the attorney into conflict with the [rules of professional conduct]." *Wellman* v. *Willis*, 400 Mass. 494, 502 (1987). See *Borman* v. *Borman*, 378 Mass. 775, 787-788 (1979); *Gorovitz* v. *Planning Bd. of Nantucket*, 394 Mass. 246, 250 (1985); *Adoption of Erica*, 426 Mass. 55, 63 (1997). See also Restatement (Third) of the Law Governing Lawyers § 202 comment b (Tent. Draft No. 3, 1996).

Also significant is that both the *Connor* and *Goldman* cases considered waiver of the right to the assistance of an attorney "unhindered by a conflict of interests" (see *Holloway* v. *Arkansas*, 435 U.S. 475, 483 n.5 [1978]) under the Sixth Amendment to the Constitution of the United States.[7] Subsequent to those decisions, the United States Supreme Court in *Wheat* v. *United States*, 486 U.S. 153, 163 (1988), a case involving multiple representation,[8] held that a trial judge has much broader discretion than suggested by *Connor* and *Goldman* in refusing waivers of conflict of interest. While there is a Sixth Amendment presumption in favor of a defendant's counsel of choice, *Wheat, supra* at 162, 164, where there is a conflict of interest or a serious potential for conflict, a Federal District Court "must be allowed substantial latitude in refusing waivers of conflicts of interest." *Id.* at 163. A court should not be "required to tolerate an inadequate representation of a defendant." *Id.* at 162, quoting from *United States* v. *Dolan*, 570 F.2d 1177, 1184 (3d Cir. 1978).[9] Although the discussion in *Wheat* involved a Federal trial court, because the decision was based on Sixth Amendment concerns, the case applies equally to State courts.

---

[7]There was no discussion of waiver under art. 12 of the Massachusetts Declaration of Rights, and, hence, the decision rested on the defendant's Federal constitutional rights. See *Commonwealth* v. *Oakes*, 407 Mass. 92, 98 (1990). The defendant here does not make a separate argument under art. 12. His general reference to that article is not sufficient. "Mere mention of the Constitution of the Commonwealth is not an argument based on State constitutional grounds." *Commonwealth* v. *Chistolini*, 422 Mass. 854, 858 n.8 (1996).

[8]Multiple representation presents particular problems and the Supreme Court noted, "For this reason, the Federal Rules of Criminal Procedure direct trial judges to investigate specially cases involving joint representation." *Wheat, supra* at 161. See Fed.R.Crim.P. 44(c). *Wheat* has, however, not been limited to such conflicts and has been applied more broadly. See *United States* v. *Lanoue*, 137 F.3d 656, 663-664 (1st Cir. 1998).

[9]The Supreme Court's quotation from *United States* v. *Dolan, supra,* continued: "Such representation not only constitutes a breach of professional ethics and invites disrespect for the integrity of the court, but it is also detrimental to the independent interest of the trial judge to be free from future

In sum, we conclude that because of the circumstances of the conflict described by Mr. Rubin, the judge acted within his discretion. Moreover, in view of the actual conflict, and the fact that Mr. Rubin held an important position in the office of the Committee for Public Counsel Services, the judge acted appropriately even under the more restrictive *Connor* and *Goldman* standards in rejecting the waiver. His comments, see *supra* at note 4, suggest that he acted in order to protect the fair and proper administration of justice, i.e., the rights of the defendant to a fair trial and the appearance of fairness to defendants represented by public counsel. See *Commonwealth* v. *Walter*, 396 Mass. 549, 559 (1986).

b. For the first time on appeal, the defendant claims he was deprived of his right to counsel at the two hearings in which Mr. Rubin's motion to withdraw was discussed and determined. Accordingly, we only consider the issue in terms of whether there has been a substantial risk of a miscarriage of justice. There was none. The defendant stated his view that he wanted to continue with counsel, thus clearly raising the issue of waiver. Moreover, a determination whether a waiver should be denied because of concerns relating to the proper administration of justice is a question on which the judge has "an independent duty," apart from the interest of the defendant. *Wheat, supra* at 161. The judge has an "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Id.* at 160. We also note that the defendant, now represented on appeal,[10] has not cited any authority for the requirement of counsel at such hearings.

There is no merit to the defendant's additional argument that the consequence of the hearing without being represented was to delay the defendant's trial and to determine adversely his prospect of a joint trial with Smith. Once the waiver was denied, a continuance was necessary for the defendant's new counsel to become familiar with the case. Cf. *Commonwealth* v. *Millen*, 289 Mass. 441, 454, cert. denied, 295 U.S. 765 (1935)

---

attacks over the adequacy of the waiver or the fairness of the proceedings in his own court and the subtle problems implicating the defendant's comprehension of the waiver."

[10]The advisability of independent counsel before finding a defendant's waiver to be valid is a different matter. See *Connor*, 381 Mass. at 505 n.5; *Goldman*, 395 Mass. at 507 n.14.

(defendant need not be present at motion for postponement of trial). That the trials of the defendant and Smith were to be severed had been decided earlier as a result of Smith's motion to sever, and it was highly unlikely that the decision would have been changed[11] if independent counsel for the defendant had been present.

c. Attorney Scott Hamilton was appointed successor counsel on May 4, 1992. On July 8, two weeks before trial, Mr. Hamilton, too, moved to withdraw, stating: "I'm afraid I just did not appreciate the complexity of the issues that were going to be involved in this case. And as I've expressed to Mr. Jordan, I do not feel that I am really able to deal with those issues effectively." In his motion, Mr. Hamilton indicated that the defendant had consented to be represented by other counsel, Attorney Geri Laventis, who would be willing to take the case. She, however, would only take the assignment conditioned on a continuance. After hearing the prosecutor argue that the case was simple, that witnesses were coming from Florida, and that the victim had been receiving numerous communications in the mail from the defendant's father, the judge denied the motion, indicating that he would be receptive to appointing co-counsel chosen by Mr. Hamilton. The case was to go forward on the July date set previously in May.

Although counsel characterized himself as unprepared, see *Commonwealth* v. *Cavanaugh*, 371 Mass. 46, 54 (1976), he had been appointed in May, had the transcript of Smith's trial, and had attended a portion of that trial. In these circumstances, and with the additional protection of co-counsel, the judge did not abuse his discretion in denying Mr. Hamilton's motions for withdrawal and a continuance filed so close to the date for trial. The trial judge allowed counsel to present his reasons and appropriately balanced the need for additional time against the increased costs, including prejudice to the victim, taking into account also "the interest of the judicial system in avoiding delays which would not measurably contribute to the resolution of a particular controversy." *Commonwealth* v. *Chavis*, 415 Mass. 703, 711 (1993), quoting from *Commonwealth* v. *Cavanaugh*, 371 Mass. at 51.

---

[11]Indeed, Smith, as contrasted with his counsel, urged at the April 28 hearing that both men be tried together. The court denied the request as the date for trial had been set and a joint trial would have required a change of schedule.

4. *Right to self-representation.* On June 17, 1992, a month and one-half after Mr. Hamilton was appointed as counsel, the defendant filed a pro se motion to proceed pro se. The defendant alleged that Mr. Hamilton had failed to meet with him to discuss trial strategy, had not accepted his phone calls, had not responded to four letters sent by the defendant, and had not taken the minimal steps necessary in preparing for the defense. The defendant requested that new counsel be appointed or in the alternative that he be allowed to proceed pro se. No action was taken on this motion.[12]

On July 7, 1992, the defendant refiled the same motion. As recounted earlier, on July 8, 1992, Mr. Hamilton filed a motion to withdraw. At that time, the judge indicated he would appoint co-counsel. On July 13, 1992, the defendant filed his motion a third time, with identical requests.[13] Again, no action was taken on this motion. On the same day, Mr. Hamilton filed a motion on behalf of the defendant to appoint attorney David Pritchard as co-counsel. The motion was allowed.

A defendant has the right to defend himself without the assistance of counsel if he knowingly and voluntarily elects to do so. *Commonwealth* v. *Moran*, 388 Mass. 655, 659 n.5 (1983), citing *Faretta* v. *California*, 422 U.S. 806, 818-832 (1975).

Contrary to the Commonwealth's contention the defendant's motion to proceed pro se was not equivocal. The defendant asserted that he wanted new counsel appointed, but made it clear that if his request was denied he wanted to represent himself. "A request to proceed pro se is not equivocal merely because it is an alternative position, advanced as a fall-back to a primary request for different counsel." *Johnstone* v. *Kelly*, 808 F.2d 214, 216 n.2 (2d Cir. 1986), citing *Faretta* v. *California*, 422 U.S. at 810 n.5, 835-836; *United States* v. *Denno*, 348 F.2d 12, 14 n.1, 16 (2d Cir. 1965), cert. denied sub nom. *DiBlasi* v. *McMann*, 384 U.S. 1007 (1966).

---

[12]"[W]hen a defendant requests that new counsel be appointed, the judge should allow the defendant to state his reasons for wanting to discharge his attorney so that the judge's discretion can be exercised on an informed basis." *Commonwealth* v. *Lee*, 394 Mass. 209, 217 (1985). The defendant's reasons were set forth in his motion. We need not reach the issue whether the judge should have inquired about the defendant's request because, as discussed below, the defendant waived his right to self-representation.

[13]The defendant did not provide a full copy of his third motion in his record appendix, but a copy retrieved from the Hampshire County Superior Court shows that the motion stated identical grounds as contained in the motions filed on June 17 and July 7.

"Once asserted, however, the right to self-representation may be waived through conduct indicating that one is vacillating on the issue or has abandoned one's request altogether." *Wilson* v. *Walker*, 204 F.3d 33, 37 (2d Cir. 2000), quoting from *Williams* v. *Bartlett*, 44 F.3d 95, 100 (2d Cir. 1994). "Thus, '[a] waiver may be found if it reasonably appears to the court that defendant has abandoned his initial request to represent himself.' " *Id.*, quoting from *Brown* v. *Wainwright*, 665 F.2d 607, 611 (5th Cir. 1982) (en banc).

At the hearing on July 8, when the judge refused to substitute Ms. Laventis as counsel but agreed to appoint co-counsel to assist Mr. Hamilton, the defendant did not voice any objection. The defendant's motion dated July 7, 1992, was endorsed "July 8, 1992[.] No action taken[.] See counsel's motion to withdraw this date which was denied." As the Commonwealth argues, the judge could reasonably have concluded that the defendant had abandoned his requests, believing that the defendant's concerns had been remedied by the decision to appoint co-counsel. The defendant's third motion, which repeated the reasons set forth in his previous motions was filed on July 13 (obviously prepared earlier), the same day that Mr. Hamilton moved on behalf of the defendant to have Mr. Pritchard appointed as co-counsel. Mr. Hamilton's motion was allowed, and the defendant did not make any written or oral complaint to the court after that appointment. Again, the court could reasonably have believed that the defendant was satisfied with the assistance of additional counsel. Moreover, the defendant did not speak out during the remainder of the pretrial proceedings or at trial. The defendant's silence stands in contrast to his willingness to address the court on Mr. Rubin's motion to withdraw. See *Wilson*, 204 F.3d at 39. In summary, from the defendant's failure to object after Mr. Pritchard was appointed, and "his decision not to reassert his previously asserted right to represent himself, it 'reasonably appears' that [the defendant] 'abandoned his initial request to represent himself.' " *Id.*, quoting from *Brown*, 665 F.2d at 611.

5. *Jury instructions on conspiracy to murder.* The judge instructed the jury that the "essence of a conspiracy is the agreement of two or more people to do an unlawful act. . . . And as to a conspiracy to murder, of course murder is taking the life of another person without any justification or excuse or reason. . . . There must be some word or deed by which you

can find, beyond a reasonable doubt, that each of the two expressed their willingness to agree to this plan and to come to this agreement to murder Carol Leith . . . ."

There was no objection to the charge but on appeal the defendant argues that the essential elements of murder — (1) an unlawful killing of another person (2) committed with malice aforethought — were not described to the jury. He concedes, in his brief, that the jury, "in finding conspiracy, necessarily found that [the defendant] and Smith actually planned to kill Leith. Such a killing would be intentional, and thus done with malice aforethought." What he complains of is that "the jury had no instructions defining when a killing is unlawful, nor when the objective of an agreement is unlawful (which makes the agreement conspiracy), nor when a killing might be justified or excused."

As stated in *Commonwealth* v. *Stack*, 49 Mass. App. Ct. 227, 236 (2000):

> "The commonsensical view is that '[i]f the offense which was the object of the conspiracy were some technical or unusually complex offense of which the trier of fact has no general impression, a suitable instruction explaining such an offense would be mandatory,' but not so where '[t]he jury as ordinary laymen have a general knowledge of what constitutes armed robbery [the target offense involved in the case] which is self-defining.' *People* v. *Ambrose*, 28 Ill. App. 3d 627, 632-633 (1975)."

The jury here would have had a general knowledge of what constitutes murder. We do not consider that a rational jury in this case where the defendant and Smith spoke of killing Leith with a baseball bat or stabbing her and dumping her in her car needed definitions of unlawful killings, justified or excused killings, or instructions as to when the objective of the agreement would be unlawful. Such definitions, had they been given, would not have affected the verdict. The defendant in no way contended at trial that the killing, if it had taken place, was justified or, for any other reason, was not unlawful. In any event there was here no substantial risk of a miscarriage of justice. See *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967). The instructions first challenged on appeal concern an issue not actively contested at trial. See *Commonwealth* v. *Picher*, 46 Mass. App. Ct. 409, 411 (1999).

6. *Prosecutor's closing.* a. The defendant claims the comment reproduced in the margin[14] impermissibly refers to the contrast between his sister's testimony and his failure to take the stand. This is too strained an interpretation. The prosecutor's remarks taken in their ordinary meaning merely pointed out that decisions as to credibility of witnesses are not easy.

b. Contrary to the defendant's contention, the prosecutor did not improperly endorse the credibility of the victim. "It is not improper to make a factually based argument that, due to the demeanor, disclosed circumstances, and appearance of a witness, a particular witness should be believed or disbelieved." *Commonwealth* v. *Kozec,* 399 Mass. 514, 521 (1987).

Moreover, the prosecutor did not rely on excluded evidence to argue for Leith's credibility. She had testified to the matter argued and her testimony had not been excluded.

c. The prosecutor may have exceeded the bounds of appropriate argument when he stated, "You must, to some extent, put yourselves, as people who use their common sense, into the shoes of a sister who is in a public courtroom testifying about the deeds of her very own brother."[15] The invitation to the jury to put themselves in the position of the victim is usually improper. See *Commonwealth* v. *Harris,* 11 Mass. App. Ct. 165, 176 (1981).

The prosecutor also should not have suggested that the Commonwealth expected guilty verdicts,[16] see *Commonwealth* v.

---

[14]"I'm just going to say that we all appreciate that it is not easy to decide the truth. It's hard when your child comes in and says one thing happened and the other child comes in and says something else happened. It's hard to sort that out. It's certainly hard for anybody to undertake the enormous responsibilities you have here."

[15]He also stated: "When Carol Leith left Florida, she left Florida to help her brother, her flesh and blood. And when she testified before you, when she saw Sgt. Trushaw, when she talked to Dorothy Clayton, he was no longer her brother; he was someone who intended to murder her. And you must consider all of that when you consider her demeanor, when you consider her reactions to questions on the stand, when you consider her very reaction to having to be in this courtroom and to talk about what happened to her at the hands of the son of her very own mother."

[16]"And when you have done your deliberations, and when you return to this room, we will all expect to hear those verdicts. And we hope and expect that you will find the Defendant guilty on each and every count."

*Sanchez*, 405 Mass. 369, 375 (1989), nor that the jury must return a verdict.[17]

The judge's instructions did much to mitigate these errors. He correctly cautioned the jury that they "do not decide a case on the basis of any gut feeling or any feeling of sympathy for anybody or sorrow," but that they must "decide the case solely on the facts [they had] heard, applying [their] common sense and logic to those facts." Prior to closing arguments, he warned them that, "[closing argument] is not an expression of personal opinion by a lawyer as to what the results should be, whether the verdict should be guilty or not guilty . . . [or] whether a particular witness is credible or not credible."

When read in the context of the overwhelming evidence at trial, and the judge's instructions, any improprieties in the prosecutor's argument did not create a substantial risk of a miscarriage of justice.

The defendant's argument that counsel was ineffective in not raising the issues we have dealt with under the substantial risk of a miscarriage of justice standard does not present a separate additional ground for reversal. As pointed out in *Commonwealth v. Curtis*, 417 Mass. at 624 n.4, "[I]f an omission of counsel does not present a substantial risk of a miscarriage of justice in a situation such as this, there is no basis for an ineffective assistance of counsel claim under either the Federal or the State Constitution."

*Judgments affirmed.*

---

[17]"It is your burden, I am afraid, and your duty, to decide this case on the basis of the evidence that you have heard in this court. And not [*sic*] matter how hard that is, and no matter how hard or how long you have to work to obtain a verdict which is unanimous, you must do so, because that is what we are here for."